**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

**Nos. 78–1660/1729 and 78–2311/21.**

United States Court of Appeals, Third Circuit.

Sept. 3, 1980.

Stephen A. Weiner, Winthrop, Stimson, Putnam & Roberts, New York City, for appellant, Irving Trust Co., as indenture trustee.

J. Donald McLeod, Dahlberg, Mallender & Gawne, Detroit, Mich., for appellant, Manufacturers Nat. Bank of Detroit, as indenture.

Richard G. Elliott, Jr., Richards, Layton & Finger, Wilmington, Del., for appellant Wilmington Trust Co.

Emil Bayko, White & Case, New York City, for appellant, Bankers Trust Co.

Larry M. Lavinsky, Proskauer, Rose, Goetz & Mendelsohn, New York City, for appellant, Bank of New York.

Donald S. Reisman, Hallendale, Fla., for appellant, Harriet Signer.

Mary Ellen Neylon, Tyler, Reynolds & Craig, Boston, Mass., for appellant, Charles S. Jeffrey.

Cletus P. Lyman, Lyman & Ash, Philadelphia, Pa., for Joseph A. Schafer.

Brice M. Clagett, Charles A. Horsky, Covington & Burling, Washington, D. C., and James E. Howard, Philadelphia, Pa., for appellees, Trustees of the Property of Penn Central Transp. Co.

George J. Wade, Shearman & Sterling, New York City, for appellee, Citibank, etc.

Louis A. Craco, Wilkie, Farr & Gallagher, New York City, for appellees, Institutional Investors Penn Central Group.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Before us are a bill of costs and objections thereto arising out of several appeals previously decided by this court.[1] We hold that the clerk of this court properly referred this extraordinarily complex dispute to us, and that, with certain modifications detailed below, costs will be taxed in accordance with the bill.

On January 11, 1979, this court issued four opinions and entered judgment in the remaining eighty–one docketed appeals taken from the plan of reorganization approved in a series of district court opinions styled *In re Penn Central Transportation Co.*, 458 F.Supp. 1234 (E.D.Pa.1978); *id.* at 1346; *id.* at 1357; *id.* at 1364. Fifty–seven of the appeals had previously been dismissed by stipulation pursuant to Fed.R. App.P. 42(b). On January 25, 1979, the successful appellees, trustees of the property of Penn Central and a group of secured bank creditors and trustees of other railroads, collectively known as the "Friday Group," filed a verified bill of costs in the office of the clerk pursuant to Fed.R.App.P. 39(d).[2] Thereafter, in accordance with the rules, some of the unsuccessful appellants filed timely objections to the bill of costs. Consideration of the bill of costs and objections was properly held in abeyance until the Supreme Court denied two petitions for writ of certiorari relevant to this litigation.

■ In accordance with the practice of this court, the bill of costs and objections were initially referred to the clerk. After preliminary review of the contentions, the clerk deemed it necessary to refer the matter to the court. Although the clerk is accorded certain powers to execute his ministerial duties, *see* Fed.R.App.P. 45, and although the court may authorize the clerk to act on certain procedural motions, *see* 28 U.S.C. § 956, the unusual circumstances of this case[3] persuade us that the matter is properly before us. When the movant claims a substantial amount in printing expenses, when the issues presented require legal determinations, and when the result turns on equitable and discretionary considerations, we conclude that this court may issue the ruling on costs.

### I.

Prior to consideration of the issues presented, a cursory recitation of the relevant procedural history is necessary. On April 10, 1978, appellants filed a timely notice of appeal from the order of the reorganization court in the district court. The initial appeals were docketed in this court on June 2, 1978. Prior to docketing, counsel for trustees submitted an omnibus motion suggesting various procedures to expedite disposition of the appeals. In pertinent part, appellees suggested the following procedure set forth in Fed.R.App.P. 30(b) with respect to filing an appendix:

4. Rather than to require each Appellant separately to designate for transmittal those parts of the record upon which it intends to rely, the Trustees have proposed, and substantially all Appellants have agreed to, the following alternative

---

1. *In re Penn Central Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979) (per Gibbons, J.); *In re Penn Central Transp. Co.*, 596 F.2d 1127 (3d Cir.) (per Aldisert, J.), *cert. denied sub nom. Wilmington Trust Co. v. Penn Central Transp. Co.*, 444 U.S. 834, 100 S.Ct. 68, 62 L.Ed.2d 44 (1979); *In re Penn Central Transp. Co.*, 596 F.2d 1154 (3d Cir. 1979) (*per curiam*); *In re Penn Central Transp. Co.*, 596 F.2d 1155 (3d Cir.) (per Higginbotham, J.), *cert. denied sub nom. Schaffer v. Penn Central Transp. Co.*, 444 U.S. 835, 100 S.Ct. 68, 62 L.Ed.2d 45 (1979).

2. Rule 39(d) currently provides in pertinent part:

A party who desires such costs to be taxed shall state them in an itemized and verified bill of costs which he shall file with the clerk, with proof of service, within 14 days after the entry of judgment. Objections to the bill of costs must be filed within 10 days of service on the party against whom costs are to be taxed unless the time is extended by the court.

The amendment to the rule effective August 1, 1979, has no effect on the issues currently before the court.

3. $106,369.21 was charged for printing the appendices and $8,587.30 for appellees' briefs, for a total of $114,956.51.

procedure. Appellants would be required to advise the Trustees, within a week of the date of the entry of the order requested by this Motion, of the documents upon which they intend to rely. *The Trustees would undertake to [assemble] such documents, as well as additional parts of the record upon which the Trustees intend to rely, and promptly to produce a single joint appendix, at no cost to Appellants, for all appeals.* Sufficient copies of the joint appendix would be distributed to the parties and filed with the Court.

Motion dated May 12, 1978 (emphasis added).

By order dated May 19, 1978, the clerk, Thomas F. Quinn, Esquire, denied the motion as presented and directed that:

the appellees–Trustees prepare, file and serve a joint appendix for these appeals in accordance with a schedule which will be set forth below. The cost of the appendix is to be borne exclusively by appellees–Trustees in the first instance, subject to the provisions of Rule 39, F.R. A.P., upon final disposition of these appeals by this Court . . . . .

In accordance with the clerk's order, the appellees filed and served a seven–volume joint appendix on June 21, 1978. Thereafter, between June 26 and July 3, 1978, briefs on behalf of appellants, presenting their arguments jointly and severally, were filed. Appellees filed their briefs from July 26 through August 4, 1978. Reply briefs and briefs *amicus curiae* were subsequently filed.

Beginning July 10, 1978, after the filing of the joint appendix and the briefs of the appellants, the first of a series of motions to dismiss particular appeals pursuant to Fed. R.App.P. 42(b) were filed. The clerk forwarded the motions to the court, and we, in due course, granted all the motions.[4] With two exceptions, all the orders dismissed the appeals with prejudice and stated that each party was "to bear its own costs." With

respect to the two remaining motions, the operative language mandated that the parties "withdraw the said appeals without costs to any party."

After the filing of all the briefs and various motions not here relevant, the court heard oral argument on certain groups of the appeals on October 16 and 17, 1978, and accepted other appeals for consideration on the briefs under Third Cir.R. 12(6). On January 11, 1979, the appeals were decided and judgment entered.

With respect to the first, second, and fourth opinions in the series, *In re Penn Central Transportation Co.*, 596 F.2d 1127 (3d Cir.) (per Aldisert, J.), *cert. denied sub nom. Wilmington Trust Co. v. Penn Central Transportation Co.*, 444 U.S. 834, 100 S.Ct. 67, 62 L.Ed.2d 44 (1979); *In re Penn Central Transportation Co.*, 596 F.2d 1154 (3d Cir. 1979) (*per curiam*); and *In re Penn Central Transportation Co.*, 596 F.2d 1155 (3d Cir.) (per Higginbotham, J.), *cert. denied sub nom. Schaffer v. Penn Central Transportation Co.*, 444 U.S. 835, 100 S.Ct. 68, 62 L.Ed.2d 45 (1979), the orders confirming the reorganization plan were affirmed or the appeals were dismissed. The court entered appropriate orders of judgment, taxing costs against appellants pursuant to Fed.R.App.P. 39(a).

In the third, *In re Penn Central Transportation Co.*, 596 F.2d 1102 (3d Cir. 1979) (per Gibbons, J.), the order confirming the plan of reorganization was affirmed in all respects except two, which were remanded for modification and for further proceedings. *Id.* at 1126. An appropriate order of judgment was entered. The judgment did not tax costs against appellants Bank of New York, Irving Trust Company, Harriet Signer, *et al., see id.* at 1122 n.9, because that aspect of the judgment effected a partial affirmance and partial reversal. *See* Fed.R.App.P. 39(a).

On January 25, 1979, appellees, trustees of Penn Central and the Friday Group, filed

---

4. Orders granting the motions were entered beginning October 4, 1978. The latest order was entered on December 4, 1978. The court heard oral argument on October 16 and 17, 1978.

a verified bill of costs asking the clerk to tax a total of $112,003.60 against the unsuccessful appellants. Because the trustees had borne the initial costs of printing the appendices, and numerous appeals had been dismissed pursuant to Rule 42(b), appellees proposed that the clerk equitably allocate costs among *all* appellants:

5. While the judgments entered by this Court on January 11, 1979, might be interpreted to impose the entire cost of the Joint Appendix and Supplemental Joint Appendix on the Appellants against whom costs were specifically taxed, *it is the position of Penn Central that it would be more equitable and consistent with the spirit of the Order dated May 19, 1978, and Rule 30(b) of the Federal Rules of Appellate Procedure to allocate the cost of the Appendices in a manner which would require all of the Appellants to share a portion of such cost.* . . .

6. It is the position of Penn Central and the Friday Group that the costs of the preparation of their briefs should be allocated only to those Appellants against whom costs were specifically taxed in the judgments dated January 11, 1979.

Bill of Costs filed January 25, 1979. The expense of printing the joint appendices was allocated by adding the cost of a *pro rata* share of those parts of the appendices common to all the appeals to the cost of additional portions peculiar to each party's appeal.

A flurry of objections ensued, attacking appellees' proposed allocation on a variety of grounds. Various groups of appellants present four major objections to the bill. First, appellants whose appeals were dismissed pursuant to Rule 42(b) assert that they are exempt from taxation of costs because prior to the clerk's order of May 19, 1978, the parties had agreed that *only* the trustees should bear the costs of printing the appendices and that this agreement was binding on the court. Alternatively, they argue that the court's orders on the Rule 42(b) motions stated that "each party is to bear its own costs," thus precluding assessment of costs against this group. Appellants' second objection is that costs are not taxable against them because the reorganization court's order was affirmed in part, reversed in part, and remanded for further proceedings. The third objection, presented by the United States, is that printing costs should be deemed an inherent expense of the reorganization and thus payable by the estate. Finally, various appellants present objections to specific costs. Having already concluded that the bill and objections were properly referred to us by the clerk, we will consider these claims *seriatim.*

## II.

Although appellants' arguments are in part persuasive, we adopt with appropriate modifications the proposal of appellees that the costs be allocated among most of the appellants. Taxation of costs is within the sound discretion of this court. Our discretion is governed by the general rule that costs are taxed in favor of prevailing parties and against losing parties. *See* Rule 39(a); *see also Universal Amusement Co. v. Vance,* 559 F.2d 1286, 1300 (5th Cir. 1977), *rev'd on other grounds,* 587 F.2d 159 (5th Cir. 1978) (per curiam) (in banc), *aff'd,* 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); *Delta Air Lines, Inc. v. CAB,* 505 F.2d 386, 387 (D.C. Cir. 1974) (per curiam).

We approve the actions taken by the appellees and the clerk of this court in expediting consideration of a vital, complex, and lengthy course of litigation. Although the effect of the trustees' motion and the clerk's order was to modify the procedure of Rule 30(a) & (b), which charges appellants with the primary duty of printing the appendix, to have required appellants to put forward costs in this instance would have been wasteful and unwise. In the absence of a single unified set of appendices, the court could have been inundated with as many as eighty-one essentially redundant documents, in addition to briefs, the very multiplicity of which would have impeded rational analysis. Further, we note with approval the trustees' voluntary assumption of the costs of printing the appendices.

Had the trustees not assumed this burden, the involvement of a multitude of printing firms, each with differing printing schedules and billing procedures, would have impaired compliance with our briefing schedule and hindered appropriate assessment of costs at final judgment.

### A.

■ Appellants whose appeals were dismissed under Rule 42(b) attack the bill of costs on two grounds. They allege first that the parties had entered an agreement under which the trustees would bear the entire expense of printing the appendices, that the agreement is binding on this court, and, implicitly, that the clerk's order that the trustees initially bear the printing expenses "subject to the provisions of Rule 39" was improper. The argument is specious. First, our review of the record discloses no such binding agreement.[5] Second, if such an agreement were made, this court would not have been bound by it. Litigants cannot usurp our power under the Federal Rules of Appellate Procedure. Rule 39(a) clearly provides that when a judgment is affirmed, costs shall be taxed against appellant unless otherwise ordered. The clerk's order of May 19, 1978, merely invoked that rule. It was no more than a declaration that the final responsibility for the costs of producing the appendices must abide the event of final disposition, and that printing costs would be awarded only to prevailing parties and not remain the sole burden of the party that advanced the costs at the outset. That parties may advance their own or another litigant's costs in the first instance does not determine ultimate liability for those costs. *See United States v. Larchwood Gardens, Inc.*, 420 F.2d 531, 534 (3d Cir. 1970).

■ We will not depart from the letter and spirit of Rule 39, which requires taxation of costs in favor of prevailing parties unless otherwise ordered. Not only did the trustees prevail; they contributed greatly to the expeditious disposition of these appeals. It would fly in the face of the rule, as well as be inequitable, to deny them reimbursement for these costs. Accordingly, the unsuccessful appellants are subject to taxation of costs with respect to both the appendices and appellees' briefs.

■ The dismissed appellants next assert that the clear language of the dismissal orders, "each party to bear its own costs," excuses them from taxation of costs for appendices. Certain non–settling appellants argue that to excuse the settling parties would impose a disproportionate share of the expenses on the parties who lost on the merits because the pool of appellants against whom costs could be taxed decreased during the course of the appeals. The trustees suggest spreading the burden proportionately among all appellants. We hold that the term "costs" in the phrase "each party to bear its own costs" should be interpreted to include the costs of producing the appendices.

■ Rule 42(b) provides:

If the parties to an appeal or other proceeding shall sign and file with the clerk of the court of appeals an agreement that the proceeding be dismissed specifying the terms as to payment of costs, and shall pay whatever fees are due, the clerk shall enter the case dismissed, but no mandate or other process shall issue without an order of the court. An appeal may be dismissed on motion of the appellant upon such terms as may be agreed upon by the parties or fixed by the court.

The import of this rule is that an appellant or both parties may move for dismissal, proposing terms of payment of costs and fees, subject to review by the court. No mandate or other order shall issue without an order of the court. Voluntary dismissal on appellant's motion is unavailable when appellant's failure to abide by the rules of court has burdened appellee. *See Blount v. State Bank and Trust Co.*, 425 F.2d 266 (4th

---

**5.** There was apparently substantial discussion of this procedure by some, but not all, of the parties. Further, the trustees' proposal was voluntary and thus gratuitous. These circumstances simply do not form a binding agreement.

Cir. 1970) (per curiam). The requirement of Rule 42(b) that no mandate or process shall issue without an order of the court and the phrase "an appeal *may* be dismissed" indicate that the court has discretion to grant or deny these motions and to set the terms thereof. *Shellman v. United States Lines, Inc.,* 528 F.2d 675, 678 (9th Cir. 1975), *cert. denied,* 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177 (1976).

■ In these cases, we considered and granted the numerous Rule 42(b) dismissals with "each party to bear its own costs," and we deem it appropriate that these appellants' "costs" include an appropriate charge for printing the appendices. Although counsel advised the clerk that settlement negotiations were proceeding and the clerk granted an exemption from the briefing schedule to various appellants, *all* appellants had already designated parts of the record for inclusion in the appendices, and the appendices and most of appellants' briefs were filed prior to the Rule 42(b) motions to dismiss. The results of the pending settlement negotiations were by no means certain and, had those negotiations been unsuccessful, the Rule 42(b) appellants would have been forced to reenter the litigation by filing late briefs and relying on the appendix already filed. The trustees incurred expenditures for the appendices on behalf of and at the behest of all appellants, both settling and non–settling. These expenditures therefore became taxable as "costs." Although those "costs" were not yet computed at the time we granted the motions to dismiss, the settling appellants had nonetheless incurred the burden of bearing their *pro rata* share of producing the appendices.

■ Thus, under the circumstances presented here, we hold that the "costs" to be borne by the Rule 42(b) appellants shall include a proportionate share of the taxable common designations and the designations peculiar to their respective appeals. They will not be taxed, however, for the cost of producing appellees' briefs, which address primarily the contentions presented by the non–settling appellants.

## B.

■ We reach a different conclusion with respect to the appeals involving the Bank of New York, Irving Trust Company, Harriet Signer, *et al.,* decided in *In re Penn Central Transportation Co.,* 596 F.2d 1102 (3d Cir. 1979) (per Gibbons, J.). In that appeal, the order confirming the plan of reorganization was affirmed in all respects but two, which were remanded for modification and further proceedings. Our order of judgment did not tax costs inasmuch as the effect of that judgment was to render a partial affirmance and partial reversal. In such instances, Rule 39(a) provides that no costs shall be taxed except as ordered by the court. We imposed no costs in the judgment with respect to these appeals and we impose none now.

## C.

■ We reject the argument by the United States that the printing expenses should be deemed an inherent expense of the reorganization taxable against the bankrupt's estate. The trustees prevailed on appeal. Their action in assuming the burden of printing the appendices substantially expedited and simplified the litigation. We see no reason, nor has one been suggested, for treating a victorious party differently with respect to costs merely because that party is trustee for a debtor in a bankruptcy proceeding. Although the trustees may have benefited most directly by expediting the filing of the appendices, the situation here is no different than any other appeal. One party inevitably desires a prompt resolution of the issues, but that is not traditionally considered in assessing costs. We conclude, therefore, that the costs of printing the appendices are indeed costs taxable against losing parties rather than inherent expenses of the reorganization.

## D.

We turn to various specific objections to the trustees' itemized bill of costs. We will not so much rehearse appellants' objections

as articulate this court's practices with respect to taxation of costs. This exposition, we trust, should have the salutary effect of more fully advising litigants in this court of their rights and duties with respect to this aspect of appellate procedure.

Opinions on cost disputes seldom reach official reporters. In this court, rulings are entered by the clerk in the first instance and reviewed when necessary by the court. Informed by the Federal Rules of Appellate Procedure, various statutes,[6] and its own experience, this court has developed a body of practice for resolving cost disputes. These disputes come at the dying moments of appeals. At times, they are mere whimpers, last gasps. At other times, cost disputes embody all the acrimony of hotly contested litigation, sometimes with great nitpicking and pettifogging, refusing to "go gently into that good night" of the closed docket. The court can use its discretion over costs in these disputes to remedy and deter abuses of the appellate process.[7]

Rule 39(c) permits taxation of costs of printing necessary copies of briefs, append-. ices, and exhibits at rates not higher than those generally charged in the locale of the clerk's office. Disputes typically center around the reasonableness of costs, the number of "necessary" copies, the reasonableness of designations for the appendix, see Rule 30(b), the printing methods used, and various special expenses.

■■■■ It has been the practice of this court to tax costs for the printing of *filed* briefs, appendices, and exhibits.[8] When traditional means of printing are employed, taxable expenses are deemed to include reasonable labor, materials, cover, binding, author's alterations not in excess of fifteen

percent of the base price, and special expenses. When other reproducing methods have been used, taxable expenses include materials and the duplicating charge. In the latter method, labor is usually not taxable because law offices produce "photo–ready" copy; as such, labor is considered office "overhead" and not an expense of printing. Docketing fees and state and local sales taxes are taxable items in this court. This court disallows costs for the following non–inclusive list of items: postage and courier fees, overtime, unreasonable author's alterations, motions, and "non–filed" documents.

■■■■ In addition, an excessive number of copies is not taxable but that number will vary with the number of parties involved and the practice of the printer. When a printer's minimum run requires a reasonable number of additional copies, that amount is taxable. When many counsel are involved, more copies are taxable. *See* Rule 31(b). In the usual appeal, we deem thirty–five copies not unreasonable, twenty–five copies for the court under Rule 31 with the balance for the parties. When counsel has indulged in unnecessary and irrelevant designation of parts of the record, costs for printing those parts of an appendix may be deemed non–taxable.[9]

In this court, counsel are not limited to using the least expensive means of printing available nor are they required to use a particular method. Our only concern is that costs not be exorbitant for the particular method of reproduction employed. The lack of restriction in this regard should not be read by counsel as license to engage in retaliatory tactics against an adversary. We will not hesitate to remedy abuses of the appellate process in such situations.

---

6. *See* Fed.R.App.P. 28, 29, 30, 31, 32, 39, & 40; 28 U.S.C. §§ 1920, 1923, 1924, & 1927.

7. *See Murphy v. L & J Press Corp.*, 577 F.2d 27, 30 (8th Cir. 1978); *Hafter v. Farkas*, 498 F.2d 587, 591 (2d Cir. 1974) (per curiam); *Volkswagenwerk Aktiengesellschaft v. Church*, 413 F.2d 1126, 1128–29 (9th Cir. 1969); *Hall v. Wright*, 240 F.2d 787, 796 (9th Cir. 1957).

8. Filed documents are timely received and properly served. Documents "received for the

information of the Court" (typically out–of–time or not authorized by the rules) are not subject to taxation of costs. The cost of printing letters and motions is not a taxable expense.

9. *See, e. g., Cotler v. Inter–County Orthopaedic Ass'n.*, 530 F.2d 536, 538 (3d Cir. 1976); *Oliver v. Michigan State Bd. of Educ.*, 519 F.2d 619, 622 (6th Cir. 1975).

Generally, with regard to the printing of documents to be considered by this court, our concern is that all briefs and appendices be legible and properly bound in strict conformance with the Federal Rules of Appellate Procedure and the Rules of the United States Court of Appeals for the Third Circuit. Adherence to these rules assures the orderly flow of cases through this court and enables the court to concentrate on the merits of an appeal without the extraneous interference of sloppy craftsmanship. Indeed, we have recently dismissed an appeal for failure to conform with the Third Circuit Rules,[10] and when we notice such abuses, we will do so in the future.

With regard to specific objections to the bill of costs submitted by trustees, we will delete all overtime and overhead labor and messenger/courier fees; accordingly, the *pro rata* allocation will be reduced. Although certain printing expenses for the appendices appear to be somewhat high, they are not unreasonable or exorbitant with respect to prices charged in the Philadelphia area. We have carefully examined the other contentions of the parties with respect to irrelevant and improper designations and failure to respond to certain arguments. These contentions do not warrant deletion of any other costs.

Accordingly, costs for printing the appendices are taxable as modified by this opinion and allocable among all non–prevailing appellants. Costs for printing appellees' briefs are taxable against all non–settling, non–prevailing appellants.

The Clerk will enter an order taxing costs in accordance with the foregoing.

---

**10.** *Kushner v. Winterthur Swiss Ins. Co.*, 620 F.2d 404, 407 -08 (3d Cir. 1980).