# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### July 2, 1999 Session

## JACKSON-MADISON COUNTY GENERAL HOSPITAL DISTRICT v. TENNESSEE HEALTH FACILITIES COMMISSION, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 98-3210-I     Irvin H. Kilcrease, Jr., Chancellor

---

### No. M1999-02804-COA-R3-CV - Filed November 28, 2001

---

This appeal involves a dispute between two hospitals regarding one hospital's desire to expand its intensive care and open-heart surgery services. After Methodist Healthcare-Jackson Hospital applied to the Tennessee Health Facilities Commission for a certificate of need, Jackson-Madison County General Hospital District objected on the ground that the proposed services would unnecessarily duplicate services it was already providing. Even though the Commission denied the application, the Commission's staff issued the certificate of need after the Attorney General and Reporter opined that the Commission's vote on reconsideration was inconsistent with the Commission's enabling statute. Rather than pursuing a contested case hearing before the Commission, Jackson-Madison County filed a petition for common-law writ of certiorari in the Chancery Court for Davidson County asserting that the Commission's vote to deny the certificate of need was proper and that one Commission member who voted to approve the certificate should have been disqualified because of a financial conflict of interest. The trial court granted the writ of certiorari but, following a hearing, dismissed the writ because Jackson-Madison County had not exhausted its administrative remedies. Jackson-Madison County appealed to this court. While this appeal was pending, Jackson-Madison County requested and received a contested case hearing before an administrative law judge sitting in place of the Commission. After the administrative law judge determined that the Commission's vote to deny Methodist Healthcare's application for a certificate of need was proper and that one of the Commission members who voted to grant the certificate of need should have been disqualified, Jackson-Madison County moved to dismiss its appeal. Methodist Healthcare opposed dismissing the appeal. We have determined that the trial court properly dismissed Jackson-Madison County's petition for writ of certiorari and that this appeal should be dismissed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Appeal Dismissed

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

William M. Barrick and William R. Willis, Jr., Nashville, Tennessee, for the appellant, Jackson-Madison County General Hospital District.

J. Richard Lodge, Jr., Robert E. Cooper, and W. Brantley Phillips, Jr., Nashville, Tennessee, for the appellee, Methodist Healthcare-Jackson Hospital.

Paul G. Summers, Attorney General and Reporter, and Michelle Hohnke Joss, Assistant Attorney General, for the appellee, Tennessee Health Facilities Commission.

**OPINION**

**I.**

Sometime in 1998, Methodist Healthcare-Jackson Hospital ("Methodist Healthcare") applied to the Tennessee Health Facilities Commission for a certificate of need to undertake a $20,355,810 expansion of its facility for the purpose of initiating neonatal intensive care and open heart surgery services. On September 11, 1998, Jackson-Madison County General Hospital District ("Jackson-Madison County") filed written objections to Methodist Healthcare's application asserting that the expanded services were not needed and would duplicate services it was already providing.

The Commission took up Methodist Healthcare's application at its September 23, 1998 meeting. After presentations from both sides, the Commission initially decided by a six to five vote to grant Methodist Healthcare's application. Following a recess, the commission member who had made the motion to grant Methodist Healthcare's application moved to reconsider the vote.[1] The Commission adopted the motion by a vote of six to five. Thereafter, the Commission, by a six to five vote, denied Methodist Healthcare's application for a certificate of need, finding that the proposed expansion was neither needed nor economically feasible and that it would not contribute to the development of adequate and effective healthcare in the area.

Methodist Healthcare's narrow defeat raised questions about the propriety of the Commission's reconsideration of its initial decision. Even though the Commission had followed a similar procedure in earlier hearings, some questioned whether its second vote was inconsistent with Tenn. Code Ann. § 68-11-108(e) (Supp. 2000).[2] Accordingly, both the Commission and a state senator requested the Attorney General and Reporter to render a formal opinion[3] regarding whether the Commission's reconsideration of its decision regarding Methodist Healthcare's application was inconsistent with Tenn. Code Ann. § 68-11-108(e). On October 1, 1998, the Attorney General issued an opinion that the Commission did not have the authority to reconsider its initial decision and that all the Commission's actions after the initial vote were of no effect.[4]

On October 23, 1998, Jackson-Madison County filed a petition for writ of certiorari and writ of supersedeas in the Circuit Court for Davidson County seeking judicial review of the Commission's proceedings on two grounds. First, Jackson-Madison County asserted that one of the

---

[1] The Commission's minutes reflect that the commissioner who had originally moved to grant Methodist Healthcare's application had been confused and had made a "mistake."

[2] Tenn. Code Ann. § 68-11-108(e) provides, in part: "The commission's decision to approve or deny an application shall be final and shall not be reconsidered."

[3] Tenn. Code Ann. § 8-6-109(b)(6) (1993) requires the Attorney General and Reporter to furnish written legal opinions to state officials on all matters submitted by them in the discharge of their official duties.

[4] Op. Tenn. Att'y Gen., No. 98-187 (Oct. 1, 1998).

Commission members who had voted in favor of granting Methodist Healthcare's application for a certificate of need should have recused himself because his company had a "direct financial relationship" with both Jackson-Madison County and Methodist Healthcare.[5] Second, it asserted that the announced intention of the Commission's staff to issue the certificate of need notwithstanding the Commission's decision to deny it was arbitrary, capricious, and unlawful.

On October 28, 1998, the circuit court transferred the petition to the Chancery Court for Davidson County, and one of the chancellors signed a fiat directing the clerk and master to issue the writ of certiorari directing the Commission to forward the record of its proceedings involving Methodist Healthcare's application for a certificate of need to the court. However, the trial court did not issue a writ of supersedeas that would have prevented the Commission from issuing the certificate of need to Methodist Healthcare.[6]

The Commission met later in the day on October 28, 1998. During this meeting, the Commission's general counsel informed the Commission of the actions taken by the trial court earlier in the day and explained her understanding of the significance of the Attorney General's October 1, 1998 opinion. She stated that the Attorney General had "effectively reversed" the Commission's September 23, 1998 decision to deny Methodist Healthcare's application for a certificate of need. She also admonished the Commission to "conform your conduct with the advice of the Attorney General" and warned that the "Commission will have to face some sort of legal action if we choose . . . to ignore [the Attorney General's opinion]."[7] The general counsel also advised the Commission that neither she nor the Attorney General would represent the Commission or the individual commissioners if they disregarded the Attorney General's opinion and that they would be required to retain their own lawyers when Methodist Healthcare filed suit. With this "advice" ringing in their ears, the commissioners decided to "concur" with the Attorney General's opinion. Thereupon, the general counsel informed the Commission that Methodist Healthcare's certificate of need would be signed and issued forthwith.

Both the Commission and Methodist Healthcare later filed motions to dismiss Jackson-Madison County's petition on the ground that Jackson-Madison County had adequate remedies under

---

[5]This commissioner was the executive vice president and part owner of a corporation that sold medical equipment and supplies to both Methodist Healthcare and Jackson-Madison County. According to an affidavit accompanying the petition, this commissioner had personally solicited orders from Jackson-Madison County.

[6]The significance of the trial court's refusal to issue a writ of supersedeas was not lost on Jackson-Madison County. After the Commission decided to "concur" with the Attorney General's opinion, Jackson-Madison County again moved for a writ of supersedeas requesting the trial court to preserve the status quo by directing the Commission not to issue the certificate of need to Methodist Healthcare. As far as this record shows, the trial court never acted on this motion and never issued a writ of supersedeas.

[7]At another point, the general counsel stated:

> I can assure you, boards and commissions that don't follow attorney general's opinions don't just go home at night and come back and do business as usual the next month. There are actions – there will be – would be an action filed in court before the sun set tomorrow, because there is accountability for failing to follow an Attorney General's opinion."

the Uniform Administrative Procedures Act that it had failed to exhaust.[8]  On December 16, 1998, the trial court entered an order dismissing Jackson-Madison County's petition for writ of certiorari with prejudice on the ground that Jackson-Madison County had failed to exhaust its administrative remedies under the Uniform Administrative Procedures Act.  Jackson-Madison County filed a timely appeal with this court.

Because the trial court had not issued a writ of supersedeas, the proceedings before the Commission did not abate while Jackson-Madison County's appeal was pending.  Both parties had requested a contested case hearing in accordance with Tenn. Code Ann. § 68-11-109(a)(1).  Accordingly, on January 7, 2001, Jackson-Madison County filed a motion for summary judgment with the administrative law judge assigned to conduct the contested case hearing.  In its motion, Jackson-Madison County asserted that Methodist Healthcare's certificate of need was invalid (1) because Tenn. Code Ann. § 68-11-108(e) did not prevent the Commission from reconsidering and denying Methodist Healthcare's application for a certificate of need and (2) because one of the commissioners who voted to grant Methodist Healthcare's application should have recused himself because of his direct financial relationship with both parties.[9]

Both Methodist Healthcare and the Commission objected to the administrative law judge's consideration of Jackson-Madison County's motion for summary judgment.  They argued that the administrative law judge lacked jurisdiction to address the motion because it was based on the same grounds as Jackson-Madison County's petition for writ of certiorari.  The administrative law judge decided to proceed with the motion.  On September 24, 2001, the administrative law judge filed an order concluding that Jackson-Madison County was, as a matter of law, entitled to a judgment vacating the certificate of need issued to Methodist Healthcare.  Based on the undisputed evidence, the administrative law judge found that one of the commissioners who voted to grant the certificate of need "had a pecuniary interest in the proceedings sufficient to necessitate his disqualification."[10]  The administrative law judge also found that Tenn. Code Ann. § 68-11-108(e) did not prohibit the Commission from reconsidering its initial vote to approve Methodist Healthcare's application because, at the time, the Commission had not yet finally "decided" whether to approve or deny the application.

---

[8]The remedy to which both the Commission and Methodist Healthcare referred arose from the Commission's unique two-stage process for considering applications for a certificate of need.  On the first stage under Tenn. Code Ann. § 68-11-108, the Commission conducts an informal hearing and then decides either to grant or deny the application.  On the second stage under Tenn. Code Ann. § 68-11-109 (Supp. 2000), any party to the first stage proceeding who is dissatisfied with the Commission's decision may request a full-blown contested case hearing.

[9]These claims are, of course, the same claims Jackson-Madison County made in its failed petition for certiorari and supersedeas.

[10] In light of the undisputed evidence that the commissioner's corporation averaged approximately $216,800 in annual sales to Methodist Healthcare and approximately $34,000 in annual sales to Jackson-Madison County, the administrative law judge found that the commissioner had a direct business relationship with both Methodist Healthcare and Jackson-Madison County that required his disqualification under Tenn. Comp. R. & Regs. r. 0720-1-.02(1) (1999) and Tenn. S. Ct. R. 10, Canon 3(E)(1) which applies to members of state boards and commissions by virtue of Tenn. Code Ann. § 4-5-302(a) (1998).  *Jones v. Greene*, 946 S.W.2d 817, 825 (Tenn. Ct. App. 1996).

With the favorable order by the administrative law judge in hand, Jackson-Madison County has now filed a Tenn. R. App. P. 15(a) motion to dismiss its appeal from the trial court's December 16, 1998 order. Methodist Healthcare opposes the motion, asserting that the administrative law judge's September 24, 2001 order is "ripe for appeal and reversal" and that "fairness and equity" should prevent Jackson-Madison County from being allowed "to 'whipsaw' Methodist . . . through the simultaneous use of competing forums." The Commission has filed no response to Jackson-Madison County's motion to dismiss this appeal.

## II.

The sole issue presently before us is whether Jackson-Madison County may voluntarily withdraw its appeal over Methodist Healthcare's objections. Resolving this issue does not require us to address the correctness of the trial court's December 16, 1998 decision to dismiss Jackson-Madison County's petition for writ of certiorari or to address the substantive issues raised in that petition. Our only task is to determine whether Jackson-Madison County satisfies Tenn. R. App. P. 15(a)'s requirements for dismissing a pending appeal.

## A.

Long before it adopted the Tennessee Rules of Appellate Procedure, the Tennessee Supreme Court recognized that an appellant had a right to withdraw or dismiss its appeal, with or without the appellee's consent, as long as the case remained in the appellate court's jurisdiction. *Fort v. Fort*, 118 Tenn. 103, 108-09, 101 S.W. 433, 435 (1907).[11] This right, however, is not unconditional. The appellate courts may require the appellant to pay the costs, *Fort v. Fort*, 118 Tenn. at 112, 101 S.W. at 436, and may also impose any other conditions necessary to prevent impairing the rights of any of the parties. *Federal Firefighters of Oak Ridge v. Roane-Anderson Co.*, 185 Tenn. 320, 323-24, 206 S.W.2d 369, 370 (1947); *Fort v. Fort*, 118 Tenn. at 114, 101 S.W. at 436.[12] In exceptional circumstances, the appellate courts may even decline to dismiss an appeal when prejudice cannot be avoided and issues of great public importance are involved. *Federal Firefighters of Oak Ridge v. Roane-Anderson Co.*, 185 Tenn. at 325-26, 206 S.W.2d at 371 (holding that an appellate court could decline to dismiss an appeal in a case where the lower court's invalidation of a statute would impair the ability of public officials to perform their duties).

A voluntary dismissal of an appeal does not result in the dismissal of the underlying case. Accordingly, an appellant seeking to voluntarily dismiss its appeal is not entitled to a dismissal without prejudice. *Banks v. Kentucky Live Stock Ins. Co.*, 7 Tenn. Civ. App. (Higgins) 419, 429

---

[11]The Court had even recognized that "an appellant may dismiss his appeal at any time before judgment is recorded, even after the opinion of the court is delivered." *C.B. Donaghy & Co. v. McCorkle*, 118 Tenn. 73, 76-77, 98 S.W. 1050, 1050 (1907). Of course, simultaneously filing the opinion and the judgment will prevent an appellant from withdrawing its appeal after the opinion has been filed.

[12]The appellate courts may even require the appellant to pay the appellee damages pursuant to Tenn. Code Ann. § 27-1-122 (2000) if the appeal is frivolous or brought for the purpose of delay. John L. Sobieski, *The Procedural Details of the Proposed Tennessee Rules of Appellate Procedure*, 46 Tenn. L. Rev. 1, 103 (1978). However, the appellate courts are inclined to grant this sort of relief only in exceptional circumstances because they do not desire to discourage voluntary dismissals. *Ormsby Motors, Inc. v. General Motors Corp.*, 32 F.3d 240, 241-42 (7th Cir. 1994); 16A Charles A. Wright, et al., *Federal Practice and Procedure* § 3988, at 748 (3d ed. 1999).

(1916). When an appellant voluntarily dismisses its appeal, the appellate court, at its option, may either affirm the lower court's judgment or simply dismiss the appeal, thereby leaving the lower court's judgment in place and returning the parties to where they were before the appeal was filed. *Fort v. Fort*, 118 Tenn. at 114, 101 S.W. at 436; *Maskall v. Maskall*, 35 Tenn. (3 Sneed) 207, 208-09 (1855); *Banks v. Kentucky Live Stock Ins. Co.*, 7 Tenn. Civ. App. at 429.

**B.**

More than fifty years ago, the Tennessee Supreme Court recognized that the right to voluntarily dismiss an appeal could be defined and controlled by statute and, presumably, by rule. *Federal Firefighters of Oak Ridge v. Roane-Anderson Co.*, 185 Tenn. at 324, 206 S.W.2d at 370. However, it was not until the advent of the Tennessee Rules of Appellate Procedure in 1979 that the Court exercised its rule-making power to enact a rule addressing the contours of the right and prescribing the procedure for exercising it. As originally adopted, Tenn. R. App. P. 15(b) provided:

> After the record has been filed with the clerk of the appellate court, if the parties to an appeal or other proceeding shall sign and file with the clerk of the appellate court an agreement that the appeal or proceeding may be dismissed, specifying the terms as to the payment of costs and fees, if any, due in connection with the appeal or proceeding, the clerk shall enter the dismissal. An appeal or other proceeding may be dismissed on motion of the appellant or moving party upon such terms as may be agreed upon by the parties or fixed by the court. A copy of the dismissal shall be filed by the clerk of the appellate court with the clerk of the trial court.

The Tennessee Supreme Court amended Tenn. R. App. P. 15 four times during the ensuing twenty-two years.[13] In 1997, after the litigants in a pending case agreed to dismiss an appeal shortly before the Court planned to file its opinion, the Court amended Tenn. R. App. P. 15 by adding Tenn. R. App. P. 15(c), which states:

> If an application for permission to appeal has been granted under Rule 11 and all parties thereafter wish to have the appeal dismissed, the appellant shall file a motion and proposed order with the clerk of the Supreme Court.

One year later, in 1998, the Court amended Tenn. R. App. P. 15 by deleting Tenn. R. App. P. 15(a), renumbering the remaining sections, and rewriting Tenn. R. App. P. 15(b) (now designated as Tenn. R. App. P. 15(a)). In its amended form Tenn. R. App. P. 15(a) now provides:

> An appeal may be dismissed by filing in the appellate court a stipulation of dismissal signed by all parties or on notice and motion by appellant. A copy of the dismissal shall be filed by the clerk of the appellate court with the clerk of the trial court. If the record has not

---

[13]The 1986 and 1996 amendments to Tenn. R. App. P. 15(a) have no bearing on this appeal.

been filed with the clerk of the appellate court, the clerk of the trial court shall file a copy of the appeal bond with the clerk of the appellate court.

Noticeably absent from the current version of Tenn. R. App. P. 15(a) is its predecessor's language explicitly conditioning the dismissal of an appeal "upon such terms as may be . . . fixed by the court."[14]  We have concluded that the change in the language of Tenn. R. App. P. 15(a) wrought by the 1998 amendment does not divest intermediate appellate courts of their discretionary authority to place conditions on voluntary dismissals of appeals to prevent prejudice to the parties or, in proper circumstances, to decline to dismiss an appeal.  We have also concluded that Tenn. R. App. P. 15(a) does not expand the grounds for denying an appellant's motion to dismiss its appeal voluntarily beyond those heretofore recognized by the courts.[15]

## C.

Because Tenn. R. App. P. 15(a) provides no substantive guidance regarding the permissible grounds for denying a motion to voluntarily dismiss an appeal, we turn back to the precedents involving voluntary dismissals.  Determining whether the appellee will be prejudiced by permitting the appellant to voluntarily dismiss its appeal requires the court to focus on the posture of the parties if the appeal was dismissed.  *Federal Firefighters of Oak Ridge v. Roane-Anderson Co.*, 185 Tenn. at 324, 206 S.W.2d at 370.  Were we to grant Jackson-Madison County's motion, we would either affirm the trial court's December 16, 1998 order dismissing Jackson-Madison County's petition for writ of certiorari, or we would simply dismiss the appeal, thereby leaving the trial court's December 16, 1998 order intact.  This order was favorable to Methodist Healthcare when it was originally entered, and it will remain so even if this appeal is dismissed.  Thus, permitting Jackson-Madison County to withdraw its appeal will not impair any rights that Methodist Healthcare possessed following the trial court's dismissal of Jackson-Madison County's petition for certiorari.

Methodist Healthcare does not insist that permitting Jackson-Madison County to voluntarily dismiss its appeal will adversely affect any of its rights under the trial court's December 16, 1998 order dismissing Jackson-Madison County's petition for certiorari.  It opposes dismissing this appeal on two other grounds.  First, Methodist Healthcare takes issue with the correctness of the legal conclusions that prompted Jackson-Madison County to move to dismiss its appeal.  Second, it argues that "fairness and equity" should require Jackson-Madison County "to see . . . [this appeal] to its natural conclusion."  In Methodist Healthcare's opinion, permitting Jackson-Madison County to voluntarily withdraw its appeal is tantamount to an endorsement of (1) simultaneously using two

---

[14]This language is similar to Fed. R. App. P. 42(b) which provides that "[a]n appeal may be dismissed on the appellant's motion on terms agreed to by the parties or fixed by the court."  Many jurisdictions have incorporated this language into their appellate rules.  As interpreted by the federal courts, this language indicates that appellate courts have discretion to grant or deny motions for voluntary dismissal and to set the terms thereof.  *HCA Health Servs. of Va. v. Metropolitan Life Ins. Co.*, 957 F.2d 120, 123 (4th Cir. 1992); *Brookhaven Landscape & Grading Co. v. F. Barton Contracting Co.*, 681 F.2d 734, 736 (11th Cir. 1982); *In re Penn Cent. Transp. Co.*, 630 F.2d 183, 190 (3d Cir. 1980).

[15]Thus, for example, we do not construe Tenn. R. App. P. 15(a) to empower an intermediate appellate court to deny an appellant's motion to dismiss its appeal simply because the briefs have already been filed or the case has already been argued or the opinion is about to be released.

competing forums to "whipsaw" an opponent and (2) the significant waste of judicial resources. We think that Methodist Healthcare doth protest too much.

We turn first to Methodist Healthcare's disagreement with the basis for Jackson-Madison County's decision to dismiss its appeal. In the motion to dismiss its appeal, Jackson-Madison County asserts that this appeal has been rendered "moot" by the administrative law judge's September 24, 2001 order. Methodist Healthcare disagrees with Jackson-Madison County's appraisal of the legal significance of the administrative law judge's order and, in fact, asserts that the order is "ripe for reversal" because the administrative law judge lacked jurisdiction to decide the two issues addressed in its order.

Jackson-Madison County has decided to withdraw this appeal and has exercised its right under Tenn. R. App. P. 15(a) to request that this appeal be dismissed. The responsibility for this decision rests squarely on Jackson-Madison County's shoulders. It is not our role at this juncture to delve into the soundness of Jackson-Madison County's reasoning or to protect Jackson-Madison County from possible errors in its legal analysis. Our only inquiry concerns the prejudice to the parties that could stem from the dismissal of this appeal. We can determine whether the parties will be prejudiced without addressing the validity of the administrative law judge's September 24, 2001 order. In fact, it would be inappropriate for us to take up the administrative law judge's order at this time because judicial review will be available under Tenn. Code Ann. § 4-5-322 (1998).[16]

Affirming the trial court's December 16, 1998 order and dismissing this appeal will leave undisturbed the trial court's decision that it had improvidently granted the writ of certiorari because Jackson-Madison County had another adequate appellate remedy. It goes no further because the trial court never reached the substantive issues regarding the disqualification of one of the Commission members or the Commission's ability to reconsider its decision. Accordingly, dismissing this appeal will not impair Methodist Healthcare's right to challenge the jurisdiction of the administrative law judge or the substantive merits of the decisions in the administrative law judge's September 24, 2001 order.

We now turn to Methodist Healthcare's second claim of prejudice. It complains that Jackson-Madison County should have dismissed this appeal before it sought a summary judgment from the administrative law judge. Jackson-Madison County's failure to dismiss this appeal, at least in Methodist Healthcare's estimation, "place[d] this case on a judicial merry-go-round" and enabled Jackson-Madison County to "whipsaw" Methodist Healthcare by simultaneously litigating the same issues in competing fora. While we may agree that Jackson-Madison complicated this proceeding by pursuing a common-law writ of certiorari rather than the other appellate remedies available under Tenn. Code Ann. § 68-11-109, we fail to understand how permitting Jackson-Madison County to abandon a proceeding that should never have been commenced in the first place prejudices Methodist Healthcare.

---

[16]We note, however, that the trial court eventually dismissed Jackson-Madison County's petition for writ of certiorari and never issued a writ of supersedeas. Its decisions were correct on both counts because Jackson-Madison County had a specific, statutorily-defined appellate remedy at its disposal when it filed its petition. By dismissing the improvidently granted writ of certiorari, the trial court divested itself of its jurisdiction. Neither party requested a stay while this appeal has been pending. Thus, the question of the administrative law judge's authority to consider and decide Jackson-Madison County's motion for summary judgment is not as one-sided as Methodist Healthcare may think.

Dismissing this appeal leaves the parties in essentially the same posture they would have been in had Jackson-Madison County never pursued the writ of certiorari. Despite this misadventure, the parties were fated to have a contested case hearing under Tenn. Code Ann. § 68-11-109 because both of them had requested one following the Commission's October 28, 1998 meeting. Thus, whether the contested case hearing commenced in 1998 or 2001, the parties have not been forced to participate in administrative proceedings that they would not have been required to participate in had Jackson-Madison County not petitioned for a writ of certiorari. In light of the current status of these proceedings, the fact that the administrative law judge reversed and vacated the Commission's decision to grant the certificate of need to Methodist Healthcare in 2001 rather than in 1998 or 1999 does not prejudice Methodist Healthcare.

After carefully analyzing the procedural posture of this case, we have no basis for concluding that Methodist Healthcare will be prejudiced in any substantive way if we allow Jackson-Madison County to dismiss its appeal. The only conceivable prejudice to Methodist Healthcare would arise from a conclusion that the trial court's December 16, 1998 order somehow precludes Methodist Healthcare from challenging the validity of the administrative law judge's September 24, 2001 order. However, as we have already pointed out, the trial court's December 16, 1998 order, limited as it is to the dismissal of the writ of certiorari it had improvidently granted, has no such preclusive effect. Should Methodist Healthcare decide to continue its efforts to keep its certificate of need afloat, the trial court's December 16, 1998 order will not prevent it from challenging the administrative law judge's jurisdiction to issue the September 24, 2001 order. Likewise, the trial court's order will not prevent Methodist Healthcare from challenging the administrative law judge's conclusion that the Commission's initial vote to grant the certificate of need is tainted by the financial conflict-of-interest of one of the Commission members who voted on the prevailing side and that the Attorney General's interpretation of Tenn. Code Ann. § 68-11-108(e) is incorrect.[17]

Permitting Jackson-Madison County to dismiss this appeal will not impair Methodist Healthcare's right to obtain judicial review of the administrative law judge's September 24, 2001 order and will not force it to participate in more administrative proceedings than it would have otherwise. Accordingly, Methodist Healthcare has failed to demonstrate that it will be prejudiced by the dismissal of this appeal.

### III.

We affirm the trial court's December 16, 1998 order dismissing Jackson-Madison County's petition for writ of certiorari, and we grant Jackson-Madison County's Tenn. R. App. P. 15(a) motion to dismiss its appeal. We tax the costs of this appeal to Jackson-Madison County General Hospital District and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[17]Nothing in this opinion should be construed as our concurring in either the reasoning or the result of Op. Tenn. Att'y Gen. 98-187 nor the propriety of the Commission's general counsel's advice and warnings during the Commission's October 28, 1998 meeting.