HOLLOWAY, Senior Circuit Judge.
I
Plaintiff-Appellant John H. Townsend III (“Townsend”), filed an action against his former employer, Defendanh-Appellee Lumbermens Mutual Casualty Company, d/b/a Kemper National Insurance Companies (“Kemper”), alleging that he had been demoted and ultimately fired because of his race — African-American—and that he had been retaliated against for complaining of race discrimination, in violation of 42 U.S.C. § 1981 and Title VII. The trial judge granted summary judgment for Kemper as to the retaliation claim. Townsend survived Kemper’s motion for summary judgment at the close of discovery as to Townsend’s race discrimination claims concerning his demotion and firing. Trial of the case followed. Kemper then moved for judgment as a matter of law at the end of Townsend’s case-in-chief and at the close of all evidence. These motions were denied and the case was submitted to the jury, which returned a verdict in favor of Kemper.
On October 22, 1999, Townsend filed a motion for a new trial on the grounds that the district court had erred in refusing to instruct the jury on the issue of pretext, and had improperly allowed Kemper to bolster the credibility of a defense witness by eliciting testimony as to the truthfulness of the supervisor responsible for the decision to demote Townsend, in violation of Federal Rule of Evidence 608(a)(2). The district court, in an opinion reported at 192 F.R.D. 290 (D.Kan.2000), denied the motion for a new trial. Townsend now *1234 appeals. In addition to Townsend’s and Kemper’s arguments, we also have before us an amicus curiae brief filed by the Equal Employment Opportunity Commission (“EEOC”) in support of Townsend’s position on the pretext instruction issue.
II
Townsend began working for Kemper in January 1986 as a personal lines marketing manager at its Overland Park, Kansas regional office. Townsend contended that after eleven years of employment with numerous merit raises and performance bonuses, as well as a promotion to the pilot position of personal lines unit manager, Kemper suddenly demoted him and then nine months later fired him. According to Townsend, Kemper told the Kansas Human Rights Commission that it demoted Townsend due to “poor performance” and that it subsequently fired him for the same reason. When asked for particulars, Kem-per stated that after it demoted Townsend, he “stopped traveling,” “became indifferent about his job,” “did very little work,” and failed to submit, as requested, an action plan on or before October 30, 1997, to improve his performance on his job.
Townsend contends that although he had objectively outperformed Chris Gold (Kemper’s other personal lines unit manager), Kemper’s regional vice president Robert Priest rated Townsend a 3, lower than Gold’s rating of 2.[1] Priest wrote that Gold was eligible for promotion if the opportunity became available, but that Townsend needed more experience before he would be eligible for promotion. In August 1996 Kemper promoted Gold and transferred him to Syracuse, New York. The personal lines unit manager position in the Overland Park office was filled by Linda Tobias, a white female.
Townsend contends that prior to October 1996 he had a professional working relationship with Priest; that at that time Kemper’s Vice President, Peter Mooney, began pressuring Priest to improve his region’s results; and that as a consequence he began to blame his problems on Townsend, including screaming at him and telling him to “shut up” at a business meeting. Townsend maintains that he was criticized by Priest for purportedly giving favorable treatment to black subordinates. Once, when Priest was upset with his black secretary, he reportedly asked Ms. Tobias, “What is it with these black people? They don’t seem to want to work.” Ill Aplt. App. 336. Priest denied making the statement, however. VI ApltApp. 1286-37.
Townsend claims that in 1996 he again had better objective results than Gold, and that in recognition of these accomplishments he was awarded a $6,000 discretionary bonus, paid in April 1997. However, unlike in previous years, he did not receive an annual performance review. Kemper claims that in 1996 Townsend’s performance continued to deteriorate in that he experienced significant loss ratio problems, failed to increase sales in his territory, failed to take steps to ensure that rates in the states within his territory were being increased to remain in line with losses he was experiencing in those states, failed to show up on time for scheduled meetings, failed to submit reports in a timely manner, and failed to complete and sign his expense reports on a regular basis. In addition, Kemper contends that a number of Townsend’s employees experienced significant performance deficiencies that *1235 Townsend either did not address or did not address in an appropriate and timely fashion. Finally, Kemper maintains that Townsend had difficulties interacting with certain independent insurance agencies in his territory that sold Kemper products, including most significantly an instance when Townsend organized and led a disastrous meeting attended by St. Louis agencies’ representatives who became extremely angry toward Townsend and Kemper.
On January 22, 1997, Priest informed Townsend that his performance as a personal lines unit manager was deficient, and requested an “action plan,” which Townsend provided on January 24. On February 7, 1997, Priest met with Townsend and (contrary to Kemper’s personnel policies) gave him no chance to improve but rather informed Townsend that he could either resign or be demoted to the position of marketing support specialist, a non-management position. Townsend accepted the marketing specialist position. Townsend was replaced as personal lines unit manager by Maureen O’Connor, a white female.
As a marketing support specialist, Townsend provided support for Tobias and O’Connor. Townsend contends that from February 10, 1997 until September 11, 1997, neither Priest, Tobias, nor O’Connor raised any issue concerning his performance, and Tobias testified that Townsend displayed a positive attitude and that he never failed to meet her expectations. Likewise, Priest testified that Townsend was performing adequately, and O’Connor said that she had not reported or documented any complaints about him.
Townsend contends that he maintained an active travel schedule throughout this period. To show his extensive travel, he introduced into evidence a compilation of expense reports covering his tenure as marketing support specialist. Moreover, O’Connor, who had assisted in preparing Kemper’s written position statement to the Kansas Human Rights Commission (claiming that Townsend has stopped traveling after his demotion), testified that that claim was false:
Q: Ma’am, in your opinion was the factual statement he stopped traveling true or false?
A: It is a false statement.
VI ApltApp. 1385. •
On August 31, 1997, Priest retired and was replaced by O’Connor. On September 5, 1997, O’Connor issued a memorandum directing Townsend to report to Tobias. On September 18, O’Connor gave Townsend a memorandum dated September 11, 1997, informing him that his performance as marketing support specialist was deficient, and downgrading his performance rating to 4 (probation). She ' directed Townsend to provide an action plan no later than October 30,1997. O’Connor did not consult with either Priest or Tobias before taking these actions. Kemper maintains that O’Connor’s dissatisfaction with Townsend stemmed from her personal observation of his performance during the five months that she was a unit manager. Brief of Defendant-Appellee at 26, citing VI Aplt.App. 1293-1304.
On the Monday following receipt of O’Connor’s September 11, 1997 memorandum, Townsend met with Tobias, his supervisor, to discuss his ideas for the action plan. He sent her an e-mail outlining his action plan, which Tobias testified she found satisfactory. Kemper contends that at the time Townsend met with Tobias, Tobias had already been removed from her job. -Moreover, Kemper contends that the e-mail was not an action plan. Brief of Defendant-Appellee at 33, citing IV Aplt. App. 785.
On September 29, 1997, Tobias resigned from Kemper, leaving Townsend without a supervisor. On October 8, 1997, O’Connor sent Townsend a memorandum asking why *1236 she had not received the action plan, although it was not due until October 30, and scheduling a meeting on October 20. At this meeting (rescheduled for October 23), Townsend gave O’Connor a memorandum, together with the action plan outline that Tobias had previously approved, along with other materials previously requested by O’Connor. Kemper contends that although the e-mail was only an outline, Townsend told O’Connor in his memo that it was his action plan. Brief of Defendant-Appellee at 34, citing I ApltApp. 98-99, III ApltApp. 567, IV ApltApp. 780-81. On October 29, 1997, O’Connor informed Townsend that his action plan was not sufficient, but did not offer suggestions on how to improve it. On November 3, 1997, she terminated Townsend. Kemper maintains that she did this because of his “outright refusal” to submit an action plan. Brief of Defendant-Appellee at 36, citing III ApltApp. 576. Kemper says that, as of October 29, O’Connor had not yet decided to terminate Townsend, III ApltApp. 564, 571-72, and that she continued encouraging Townsend to submit an action plan until then, id. at 564, 572-73.
At trial, O’Connor testified that if Townsend had provided an acceptable action plan by October 30, he would have been retained. However, Barbara Maddux, Kemper’s operations manager responsible for preparing its budget, testified that in early September 1997, O’Connor met with her and directed her to “eliminate” Townsend from the 1998 budget because Peter Mooney, Kemper’s Executive Vice President of Personal Lines, disliked him. At trial, O’Connor disputed Maddux’s testimony and testified that she “never deletes people off the budget.” Ill ApltApp. 579-80.
III
This suit is brought under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. Therefore, the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and we exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291.
Townsend argues for a new trial on two bases. First, he says that the district court erred in refusing to instruct the jury that, if it did not believe Kemper’s explanation, it could take this as evidence that Kemper’s true motive for terminating him was discriminatory and could on this basis conclude — though it need not do so — that Kemper terminated Townsend for a discriminatory reason.[2] Second, he argues that the district court erred in admitting character evidence to bolster the credibility of a witness, Townsend’s former supervisor Mr. Priest, before the character of the witness was attacked, in violation of Fed.R.Evid. 608(a)(2).
IV
Townsend first contends that it was reversible error for the district court not to instruct the jury that it could infer intentional discrimination if it found that Kemper’s explanation was pretextual. Townsend requested a pretext instruction identical to the Eighth Circuit Court of Appeals’ Model Instruction 5.95:
You may find that plaintiffs race was a motivating factor in defendant’s decision to demote or discharge plaintiff if it has been proved by the preponderance of the evidence that defendant’s stated reason^) for its decisions are not the true *1237 reasons, but are a “pretext” to hide discriminatory motivation.
I ApltApp. 74. The record reflects that Townsend properly objected to the lack of an instruction on this theory by an objection made in conference, ruled on, and later timely renewed. VII ApltApp. 1428, 1460,1539.
To determine whether the jury was adequately instructed on the applicable law, we review the instructions in their entirety de novo to determine whether the jury was misled in any way. The instructions as a whole need not be flawless, but we must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them.
Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 552 (10th Cir.) (citations omitted), cert. denied, 528 U.S. 813, 120 S.Ct. 48, 145 L.Ed.2d 42 (1999); Sanjuan v. IBP, Inc., 160 F.3d 1291, 1300 (10th Cir.1998). We have reviewed the jury instructions in their entirety, I ApltApp. 125-58, and must agree with the Plaintiff-Appellant Townsend that the fundamental error he asserts occurred.
The district court here relied on an unpublished opinion, Calhoun v. Ball Corp., No. 95-1272, 1997 WL 292129 (10th Cir. June 3, 1997), in determining to deny both parties’ requests for a pretext instruction. Calhoun, for reasons discussed more fully infra, is not binding precedent nor does it persuade us. We find instructive our earlier published opinion in Randle v. City of Aurora, 69 F.3d 441 (10th Cir.1995).
In Randle, we held that a plaintiff can prove illegal discrimination in two distinct ways, “either (1) inferentially by showing that the proffered reason is a pretext for discrimination; and/or (2) directly by offering direct evidence of discrimination.” Id. at 453 (citation and footnote omitted). Randle, moreover, made clear that a plaintiff seeking to prove discrimination by demonstrating the pretextual nature of the defendant’s explanation, must also “convince the jury not only that the reason proffered by the defendant was pretextual, but that the jury should infer that the defendant’s pretext concealed a motive of discriminating against the plaintiff in violation of the civil rights laws.” Id. at 453 n. 18.
Although we have not yet expressly required a pretext instruction in employment discrimination cases, we have approved pretext instructions in similar contexts. See, e.g., Mason v. Okla. Tpk. Auth., 115 F.3d 1442, 1454 (10th Cir.1997) (approving an instruction that, if the jury disbelieved defendants’ stated reasons for making an employment decision, it would be permitted but not required to infer that political patronage was a motivating factor in the plaintiffs termination); Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1425 n. 3 (10th Cir.1993) (approving an instruction that if the plaintiff showed that the defendant’s stated reasons for an employment decision was pretextual the jury could infer age discrimination).
The Second and Third Circuits, which have addressed this question, have presented strong reasons for requiring a pretext instruction. In Smith v. Borough of Wilkinsburg, 147 F.3d 272 (3d Cir.1998), the Third Circuit ruled that such an instruction was required. In Smith, the plaintiff sued under the Age Discrimination in Employment Act (ADEA), alleging that the defendant had failed to renew his employment contract because of his age. At the close of the trial, the district court refused the plaintiffs request that the jury be instructed that it could infer intentional discrimination if it disbelieved the defendant’s asserted reasons for not renewing the contract, and the trial judge instead emphasized that the jury’s task was to determine whether the plaintiffs age was a *1238 determinative factor in the decision not to renew.[3] Id. at 274, 279.
The Third Circuit reversed. Noting that “[i]t is black letter law that ‘[i]t is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for the truth,’ ” the court of appeals held that the judge’s failure to give the instruction “left the jury inadequately informed of the applicable law.” Id. at 278 (quoting 9A Charles A. Wright and Arthur Miller, Federal Practice and Procedure § 2556 at 438 (2d ed.1995)) (second alteration in original). The Third Circuit noted that it had “steadfastly adhered to the principle that the objective of the charge is to clarify the issues in the light of the evidence to provide aid and guidance for the jury.” Id. at 279 (quoting Atkinson v. Roth, 297 F.2d 570, 574 (3d Cir.1961)) (quotation marks omitted). Likewise, the court of appeals held that the “trial court must ensure ‘that the jury be given full and complete instructions by relating the law to the relevant evidence in the case.’ ” Id. (quoting Choy v. Bouchelle, 436 F.2d 319, 325 (3d Cir.1970)). The Third Circuit therefore concluded:
Applying these principles, it is clear that the jury must be given the legal context in which it is to find and apply the facts. It is difficult to understand what end is served by reversing the grant of summary judgment for the employer on the ground that the jury is entitled to infer discrimination from pretext ... if the jurors are never informed that they may do so. Accordingly ... the jurors must be instructed that they are entitled to infer, but need not, that the plaintiffs ultimate burden of demonstrating intentional discrimination by a preponderance of the evidence can be met if they find that the facts needed .to make up the prima facie case have been established and they disbelieve the employer’s explanation for its decision.
Id. at 280 (emphasis added).
Agreeing with the Third Circuit, the Second Circuit held in Cabrera v. Jakabovitz, 24 F.3d 372, 382 (2d Cir.), cert. denied, 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994), that the district courts must instruct juries that they can infer discriminatory intent from disbelief of defendants’ explanations. The court of appeals stated: “[T]he jury needs to be told ... [it] is entitled to infer, but need not infer, that this burden has been met if they find that the four [elements of the prima facie case] previously set forth have been established and they disbelieve the defendant’s explanation.” Id. (citation omitted).[4]
We are mindful that other circuits’ opinions differ from the Smith and Cabrera requirements. ' The Seventh Circuit in Gehring v. Case Corp., 43 F.3d 340, 343 (7th Cir.1994), cert. denied, 515 U.S. 1159, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995), explained that, while the plaintiffs proposed pretext instruction was
*1239 a correct statement of the law, ... a judge need not deliver instructions describing all valid legal principles. Especially not when the principle in question describes a permissible, but not an obligatory, inference. Many an inference is permissible. Rather than describing each, the judge may and usually should leave the subject to the argument of counsel.
Id. at 343 (citations omitted). Likewise the Eleventh Circuit in Palmer v. Bd. of Regents of the Univ. Sys. of Ga., 208 F.3d 969, 974-75 (11th Cir.2000), said that it was not reversible error to refuse to give the plaintiffs requested pretext instruction. There, however, the plaintiff apparently presented a somewhat different argument for a new trial than does Townsend: “Specifically, Palmer suggests that the instructions given did not make it sufficiently clear that, having established a prima facie case, she did not need to present additional evidence in order to rebut the nondiscriminatory reasons given by the [defendant].” Id. at 973.
The First and Eighth Circuits, in dicta, said they doubted that a pretext instruction was required. Fite v. Digital Equip. Corp., 232 F.3d 3, 7 (1st Cir.2000); Moore v. Robertson Fire Prot. Dist., 249 F.3d 786, 790 (8th Cir.2001). We must determine whether in the case at bar “the jury understood the issues to be resolved and its duty to resolve them,” Medlock, 164 F.3d at 552, without being given a pretext instruction.
V
We are not persuaded by Kemper’s arguments. First, Kemper relies on this court’s unpublished opinion in Calhoun v. Ball Corp., 1997 WL 292129. In Calhoun, the plaintiff sued his employer under Title VII and § 1981, alleging that it had discriminated and retaliated against him on the basis of race. After a jury verdict in favor of the defendant, the plaintiff appealed, arguing that the jury instructions “were misleading because they did not instruct the jury that it could find in his favor if it determined that [the defendant’s] proffered reasons for not promoting him and, ultimately, terminating him were false.” The panel disagreed. Noting that the plaintiffs ultimate burden under the McDonnell Douglas framework is to prove that the defendant had intentionally discriminated against him because of race, the panel ruled: “Although the jury’s rejection of [the defendant’s] proffered reasons for its actions would have allowed it to infer the ultimate facts of intentional discrimination or retaliation, we believe the instructions correctly conveyed the applicable law to the jury.” Id. at *1 (internal citations omitted).
The Calhoun order and judgment does not require affirming the instant case. As an initial matter, Calhoun, as an unpublished decision, is not binding precedent in this case. This circuit’s rules advise that citation of an unpublished decision is allowed if it “(1) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (2) it would assist the court in its disposition.” 10th Cir. R. 36.3(B). However, the rule explains that “[c]itation of an unpublished opinion is disfavored.” Id. Furthermore, paragraph (A) of the rule explains that “[u]npublished orders and judgments are not binding precedents ....” Id.
Furthermore, the Calhoun panel did not expressly consider this court’s prior opinion in Randle v. City of Aurora, 69 F.3d 441, which held that “discriminatory animus may be inferred from the simple showing of pretext.” Id. at 451. The Supreme Court has felt it necessary to explain the reasoning behind such a permissible inference. Regarding the pre *1240 sumption in favor of a plaintiff created when the finder of fact rejects an employer’s proffered explanation, the Court said:
The factfinder’s disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant’s proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination....
St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (footnote omitted). The Court explained that although such a presumption permits a finding of discrimination, it does not compel such a finding. Id.
More recently, the Court has reaffirmed this reasoning as to jury findings in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). There the Court, “recognizing that the question facing triers of fact in discrimination cases is both sensitive and difficult, and that there will seldom be eyewitness testimony as to the employer’s mental processes,” id. at 141, 120 S.Ct. 2097 (citations, internal quotation marks and brackets omitted), offered a detailed explanation of its reasoning:
In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party’s dishonesty about a material fact as “affirmative evidence of guilt.”... Moreover, once the employer’s justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.
Id. at 147, 120 S.Ct. 2097 (citations omitted).
The other cases Kemper relies on are similarly unpersuasive. The only Tenth Circuit published opinion Kemper cites on this issue, EEOC v. Prudential Fed. Sav. & Loan Ass’n, 763 F.2d 1166 (10th Cir.1985), held that the district court did not err in refusing to give the defendant’s requested pretext instruction in an ADEA case. We find Prudential inapplicable here. In Prudential the requested instruction was materially different than the one at issue in this case. The Prudential court said that the instruction Prudential had requested would have misled the jury into thinking that the EEOC had to show that discrimination was the sole factor, whereas in fact the EEOC only had to show that it was one factor, and that it had made a difference. Id. at 1170. This concern is not present in the instant case, where Townsend’s proposed instruction correctly stated the law.
Finally, and perhaps most significantly, we note that the Supreme Court in Hicks and Reeves cleared away a circuit split over the so-called “pretext-plus” theory which said that a jury’s rejection of an employer’s proffered explanation could not, by itself, suffice to show discriminatory motive. See Kline v. Tenn. Valley Auth., 128 F.3d 337, 343-44 (6th Cir.1997) (discussing circuit split and its resolution by Hicks). Even after Hicks, federal courts had not yet fully abandoned the “pretext-plus” theory. See Reeves v. Sanderson Plumbing Prods., Inc., 197 F.3d 688, 693 (5th Cir.1999) (holding that even if plaintiffs evidence showed that employer’s proffered explanation was pretex-tual, the inference that employer had engaged in unlawful discrimination would still not be permissible without more evi *1241 dence showing that the employer’s true motive was discriminatory). The Supreme Court granted certiorari and reversed the Fifth Circuit, explaining that Hicks forbade summary judgment for a defendant where the plaintiff, after presenting a pri-ma facie case, presented evidence that the defendant’s proffered explanation was pre-textual. Reeves, 530 U.S. at 146-49, 120 S.Ct. 2097. This is a difficult matter for courts, and would certainly be difficult for a jury. We consider the danger too great that a jury might make the same assumption that the Fifth Circuit did in Reeves. Therefore, we hold that in cases such as this, a trial court must instruct jurors that if they disbelieve an employer’s proffered explanation they may — but need not — infer that the employer’s true motive was discriminatory. Moreover we are persuaded by the position of the EEOC that the issue is whether in the absence of any instructions about pretext, “the jury found for the defendant because it believed the plaintiff could not prevail without affirmative evidence that his race was a motivating factor in the challenged employment decisions.”[5] Amicus Brief of EEOC at 10.
We do not hold that a pretext instruction is always required, but rather that it is required where, as here, a rational finder of fact could reasonably find the defendant’s explanation false and could “infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.” Reeves, 530 U.S. at 134, 120 S.Ct. 2097. See id. at 134-35, 120 S.Ct. 2097 (suggesting that there may be situations in which “no rational factfinder could conclude that discrimination had occurred” but declining to “resolve all such circumstances”).
We are persuaded by the Third and Second Circuits’ reasoning in Smith and Cabrera. Furthermore, we note that the Third Circuit indicated that failure to give a requested pretext instruction when requested could be reversible error. Smith, 147 F.3d at 280. We agree, and find that the instructions given here by the district court did not adequately convey the law to the jury, and that as a result the jury may have been misled. We therefore hold that the district court erred in refusing to give such an instruction here.
*1242 A faulty jury instruction requires reversal when (1) “we have substantial doubt whether the instructions, considered as a whole, properly guided the jury in its deliberations,” Morrison Knudsen Corp. v. Fireman’s Fund Ins. Co., 175 F.3d 1221, 1235 (10th Cir.1999) (quotation omitted); and (2) “when a deficient jury instruction is prejudicial,” Coleman v. B-G Maintenance Management of Colo., Inc., 108 F.3d 1199, 1201 (10th Cir.1997). “Thus, where a jury instruction is legally erroneous, we reverse if the jury might have based its verdict on the erroneously given instruction.” Id. (quotation omitted).
Kemper contends that error in instructing the jury resulting from rejection of the pretext instruction was harmless, arguing that “the vast weight of the evidence submitted in this case supported the. jury’s verdict and the inclusion of a pretext instruction could not have changed the result.” Brief of Defendanb-Appellee at 40.
“Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer’s proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.” Morgan v. Hilti, 108 F.3d 1319, 1323 (10th Cir.1997) (citations and internal quotation marks omitted). At trial a good deal of conflicting evidence was presented, requiring the jury to determine issues of credibility. Kemper, on the one hand, asserted that it “demoted and ultimately discharged [Townsend], not because of his race, but because of his poor performance and his failure to provide an action plan.” VIII Aplt.App. 1634 (position statement of Kemper to Kansas Human Rights Commission). Evidence was offered, however, that O’Connor had already instructed Maddux to eliminate Townsend from the budget long before his action plan was due, saying she would be eliminating him. Ill Aplt.App. at 588. This raised a sharp conflict in the evidence and the jury needed guidance by the requested pretext instruction to tell them that if they did not believe Kemper’s explanation, they could draw an inference of discriminatory action. Townsend here had not “created only a weak issue of fact as to whether the employer’s reason was untrue .... ” Reeves, 530 U.S. at 148, 120 S.Ct. 2097.
We find helpful an earlier order ruling on Kemper’s motion for summary judgment.[6] I Aplt.App. 45-59. There the court held that Kemper had met its burden of articulating a nondiscriminatory explanation for the challenged employment actions. I Aplt.App. 55. The court also held that “a reasonable jury could conclude that Ms. O’Connor made the decision to terminate plaintiffs employment long before October 30, 1997 and, accordingly, that the discharge had nothing to do with plaintiffs action plan....” Id. at 58. In so holding, the district judge relied on the closeness in time between a performance bonus given to Townsend and his demotion, evidence of Kemper’s employees’ statements about Townsend, and evidence that Kemper intended to “get rid of’ Townsend well before he was actually dismissed. Id. at 57. We consider in addition evidence of Townsend’s years of good service and Kemper’s possibly disparate evaluation of Townsend and non-black employees. We hold that Townsend presented evidence from which the jury could reasonably have found that Kemper’s stated reasons for demoting and firing Town *1243 send were pretextual, potentially entitling him to a finding of discrimination, on the theory of the Eighth Circuit’s- model pretext instruction, which Townsend requested.
Because the jury might have based its verdict on the erroneous instructions, this error requires reversal. Coleman, 108 F.3d at 1201.
VI
Since we hold that the jury instruction error requires reversal, we need not reach the question of whether the court improperly admitted evidence of Mr. Priest’s truthful character in violation of Fed. R.Evid. 608(a)(2).
VII
Accordingly, we REVERSE the district court’s denial of a new trial and REMAND this case to the district court for further proceedings consistent with this opinion.

. Kemper claims that Gold's performance on objective measures was better than Townsend's in 1995. Brief of Defendant-Appellee at 15. In addition, Priest testified that in 1995 Townsend was not managing his staff as well as Priest believed was necessary and that he did not have this concern with Gold. VI ApltApp. 1210-11.

. The EEOC in its amicus brief urges us to hold that such an instruction is required. The commission provides extensive citation and analysis of relevant case law. Amicus Brief of EEOC at 4-16.

. The district court in Smith instructed the jury as follows:
[T]he dispositive fact that you must decide is whether Mr. Smith has proven by a preponderance of the evidence that his age was a determining factor in the borough's decision not to renew his employment contract. He need not prove that his age was the sole or exclusive reason for the borough’s decision not to renew the contract. Age is a determining factor, however, if Mr. Smith's contract would have been renewed except for his age.
Smith, 147 F.3d at 279 (alteration in original).

. Cabrera, a housing discrimination case, applied "the framework of burdens fashioned in Title VII cases.” Id. at 383.

. The dissent relies considerably on the arguments of counsel to take the place of instruction by the judge on this issue. However, the issue is not the mere fact that an inference of discrimination is possible. Rather, the permissibility of an inference of discrimination from pretext alone is a matter of law that the Supreme Court recently clarified in Reeves, 530 U.S. at 146-49, 120 S.Ct. 2097. As we have held,
the judge is the governor of the trial, with the inescapable duty to fully and correctly instruct the jury on the applicable law of the case, and to guide, direct and assist them toward an intelligent understanding of the legal and factual issues involved in their search for the truth.
Tyler v. Dowell, 274 F.2d 890, 897 (10th Cir.), cert. denied, 363 U.S. 812, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960) (emphasis added). While counsel may be relied on to point out facts and suggest reasoning, the judge’s duty to give an instruction on an applicable matter of law is clear. This is particularly true where, as here, the law goes to the heart of the matter.
We believe the dissent blurs the distinction between error and harmlessness. Argument of counsel can mitigate harm, as the dissent points out, but it cannot prevent a judge's failure to properly instruct the jury from being error. We also believe that harm arising from a jury’s confusion is likely where, as here, the law the jury should have been instructed on has proven too difficult even for federal courts to discern without guidance from the Supreme Court. See Reeves, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105, rev’g 197 F.3d 688. It is unreasonable, we think, to expect that jurors, aided only by the arguments of counsel, will intuitively grasp a point of law that until recently eluded federal judges who had the benefit of such arguments.

. This order of Sept. 14, 1999, was issued by Judge Lungstrum. Later rulings were made by Judge Murguia, who presided at trial.