Jaymee BARRINGTON,
Plaintiff-Appellant,

v.

UNITED AIRLINES, INC.,
Defendant-Appellee.

No. 16-1292

United States Court of Appeals,
Tenth Circuit.

Filed October 4, 2017

(D.C. No. 1:15-CV-00590-CMA-CBS) (D. Colorado)

John Olsen, Erie, CO, for Plaintiff-Appellant

Cathy Havener Greer, William Thomas O'Connell, III, Wells Anderson & Race, Denver, CO, for Defendant-Appellee

Before HARTZ, HOLMES, and BACHARACH, Circuit Judges.

## ORDER AND JUDGMENT *

Robert E. Bacharach, Circuit Judge

Ms. Jaymee Barrington sued United Airlines, Inc. under Title VII of the Civil Rights Act of 1964, claiming gender-based discrimination and retaliation. After a trial, the jury rendered a verdict for United on both claims, and the district court entered a final judgment. Ms. Barrington appeals, arguing that the district court erroneously

---

* This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But our order and judgment may be cited for its persuasive value under Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

failed to instruct the jury on pretext. We agree.

## I. The Standard of Review

In this appeal, we apply the abuse-of-discretion standard. *Cordova v. City of Albuquerque*, 816 F.3d 645, 660 (10th Cir. 2016).

## II. The General Need for a Pretext Instruction

When an employer has provided an innocent explanation for the adverse action and the employee presents evidence of pretext, the jury may infer that the employer acted with discriminatory intent. *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1533 (10th Cir. 1995). In light of the availability of this inference, the district court must instruct the jury that it may infer discriminatory intent from pretext if one can reasonably regard the defendant's explanation as false. *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1241 (10th Cir. 2002). When a pretext instruction is requested and supported, omission of the instruction requires reversal. *Id.*

## III. Ms. Barrington's Evidence of Pretext

At the time of the underlying events, Ms. Barrington had worked at United for approximately 25 years. In 2011, she became an Airport Operations Ramp Supervisor in Denver, Colorado. In her 2011 performance review, Ms. Barrington received satisfactory or positive evaluations in all categories.

But in roughly mid-2012, Ms. Barrington complained that United was engaging in gender discrimination. Following these complaints, Ms. Barrington's 2012 evaluation contained poor ratings in nearly every category. Ms. Barrington believed that this poor review rendered her ineligible for future promotions. This belief led Ms. Barrington to sue United for gender discrimination and retaliation.

At trial, the district court allowed Ms. Barrington to argue pretext but declined to instruct the jury on pretext, reasoning that Ms. Barrington's evidence related to the elements of her claims rather than to pretext. In our view, however, a reasonable jury could find pretext based on Ms. Barrington's evidence.

\* \* \*

Pretext involves the falsity of the employer's explanation. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Thus, we must consider Ms. Barrington's evidence challenging the truthfulness of United's explanation for Ms. Barrington's poor evaluation in 2012. As noted above, the district court had to give a pretext instruction if a reasonable jury could find that United's justification for Ms. Barrington's evaluation constituted a pretext for discrimination. *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1241 (10th Cir. 2002).

The 2012 evaluation was administered by Mr. Ken Brown, United's Director of Airport Operations, Policies, and Procedures. Mr. Brown stated that Ms. Barrington had failed to consistently meet expectations in nearly every category: "Focusing on the Future Delivering Today," "Building on Dignity and Respect," "Powering through Teamwork," "Making the Difference," and "Fostering Open, Honest and Direct Communication."[1]

At trial, United defended the 2012 evaluation based on Mr. Brown's opinion that Ms. Barrington had sent a series of inap-

---

1. Mr. Brown stated that "[o]perationally," Ms. Barrington's conduct had met expecta-tions. But "Operations" was not a stand-alone category.

propriate emails to supervisors. Ms. Barrington contended that United's explanation served as a pretext.

Ms. Barrington's evidence of falsity fell into six categories:

1. Other supervisory employees believed that Ms. Barrington was generally a satisfactory employee.

2. Ms. Barrington's direct supervisor was supposed to administer Ms. Barrington's performance reviews. This supervisor believed that Ms. Barrington had met all expectations in 2012. But contrary to United's regular policy, Mr. Brown—who did not directly supervise Ms. Barrington—administered Ms. Barrington's 2012 performance review.

3. Ms. Barrington had not been told, prior to the evaluation, that she had done anything wrong.

4. Mr. Brown had a motive to give a negative evaluation because he had been the subject of Ms. Barrington's complaint to United.[2]

5. In the past, United had given poor ratings to employees complaining of gender discrimination.

6. For Ms. Barrington's 2010 performance review, two United executives had told Ms. Barrington's supervisor to give Ms. Barrington a poor evaluation, which the supervisor did even though she disagreed with this evaluation.

United points to its own evidence, which indicated that Mr. Brown had sincerely believed that Ms. Barrington's 2012 emails were inappropriate. United's evidence weighed against a finding of pretext but did not preclude such a finding. For example, evidence of Mr. Brown's sincerity did not necessarily trump Ms. Barrington's evidence that Mr. Brown had a motive to make a negative evaluation, that he had deviated from United's policy by doing the evaluation himself, that Ms. Barrington had not been criticized in the year leading up to the negative evaluation, and that Ms. Barrington's direct supervisor had opined that Mr. Brown's negative evaluation was inaccurate. These categories of evidence could reasonably have led the jury to regard United's explanation for the 2012 evaluation as pretextual. In addition, Mr. Brown gave Ms. Barrington a negative evaluation even in some areas unrelated to her 2012 emails (such as categories ostensibly involving operations). In light of Ms. Barrington's evidence, the district court erred in failing to instruct the jury on pretext.

Reversed.

## ORDER

December 11, 2017

This matter is before the court on Appellant's unopposed "Motion for Partial Reconsideration Regarding Request for Award of Attorney's Fees," requesting appellate attorney's fees should she prevail upon re-trial in the district court; Appellant's "Verified Bill of Costs"; Appellee's "Response to Plaintiff - Appellant's Verified Bill of Costs"; and Appellee's "Response to Plaintiff - Appellant's Motion for Partial Reconsideration Regarding Request for Award of Attorney's Fees."

Upon consideration, the motion for partial reconsideration regarding request for award of attorney's fees is construed as a motion for an award of attorney's fees, and, so construed, the motion is granted. Should Appellant prevail upon re-trial in

---

2. Mr. Brown relied partly on Ms. Barrington's frequent assertion of illegitimate claims against other managerial employees. *See* Appellant's App'x at 1287 ("You make frequent claims against station and department leaders with no legitimate grounds for doing so.").

the district court, we remand to the United States District Court of the District of Colorado for a determination of the amount of appellate attorney's fees that were reasonably and necessarily incurred. See Slade v. United States Postal Serv., 952 F.2d 357, 962 (10th Cir. 1991) ("Plaintiff's successful appeal does not establish him as a prevailing party because the only relief afforded to Plaintiff was to permit the case to go forward on the merits. Unless a party has established his entitlement to some relief on the merits of his claims, he is not a prevailing party entitled to an award of attorney's fees."). The district court may, in its discretion, conduct any and all further proceedings it deems necessary and appropriate on the issue of appeal-related attorney's fees.

We direct as follows as to Appellant's bill of costs:

Where this court reverses a judgment, costs are taxed against Appellee. See Fed. R. App. P. 39(a)(3). This court permits an award of costs associated with producing the court-required copies of Appellant's briefs and appendix; the costs associated with producing court-required copies include binding costs. See 10th Cir. R. 30.1 (one hard copy of appendix); 10th Cir. R. 31.5 (seven hard copies of briefs); 10th Cir. R. 39.1 (providing that copying costs "are taxable at the actual cost, but no more than 20 cents per page"); see also Bancamerica Commercial Corp. v. Mosher Steel of Kansas, Inc., 103 F.3d 80, 82 (10th Cir. 1996) (order); In re Penn Central Transp. Co., 630 F.2d 183, 191 (3d Cir. 1980) ("[T]axable expenses [for producing necessary copies] are deemed to include reasonable labor, materials, cover, [and] binding. . . ."). Accordingly, costs will be taxed in favor of Appellant for seven copies of the principal brief (51 pages x 7 copies x $0.20/page = $71.40); one copy of the appendix (1,526 pages x 1 copy x $0.20/page =

$305.20); seven copies of the reply brief (33 pages x 7 copies x $0.20/page = $46.20). Costs will also be taxed in favor of Appellant for the docketing fee ($500.00).

Appellant's request to tax costs is denied without prejudice to renewal in the district court to the extent that the request asks us to tax costs for transcript preparation, which are taxable only in the district court pursuant to Fed. R. App. P. 39(e).

In light of the forgoing, and pursuant to Fed. R. App. P. 39 and 10th Cir. R. 39, costs are taxed in favor of Appellant and against Appellee in the amount of $922.80.

A copy of this order shall stand as a supplement to the mandate issued on October 26, 2017.

Entered for the Court ELISABETH A. SHUMAKER, Clerk

by: Lindy Lucero Schaible Counsel to the Clerk

HARTZ, Circuit Judge, concurring:

I concur. In particular, I agree that we should reject Ms. Barrington's requests for certain costs even though United Airlines did not challenge those requests. This court's sua sponte enforcement of clear law does not constitute improper "advocacy" or departure from "judicial neutrality." I only wish that we afforded to pro se litigants the same consideration given here to United Airlines. Compare Hill v. Corizon Health, — Fed.Appx. —, No. 17-3087, 2017 WL 5256213, at *3, (10th Cir., Nov. 13, 2017).

I am not convinced by Judge Bacharach's effort in his concurrence to distinguish this case from Hill. In both cases one party sought something and the opposing party did not argue to the contrary. In this case we nevertheless grant relief to the opposing party—United Airlines—although relatively little is at stake. In Hill, however, we denied relief even though the

error was indisputable and entire claims were at stake. As I understand the concurrence, the difference between the cases is that the error here was so obvious that the clerk noted it. I see no principle behind this distinction, other than perhaps the pragmatic consideration that courts should not devote much effort to searching for unchallenged error. But no difficult search was necessary in *Hill.* And I would have thought that part of a court's role in pro se cases is checking whether the pro se litigant has been subjected to an obviously improper application of a technical doctrine that almost certainly is beyond the understanding of nonlawyers.

BACHARACH, J., concurring.

The panel has unanimously concluded that the transcription costs and unnecessary printing and binding costs should not be taxed in this appeal. All panel members agree, but Judge Hartz suggests that the disposition treats a represented party (United Airlines) differently than a pro se party in an unrelated case (*Hill v. Corizon Health, Inc.*).

The court has agreed to deduct transcription costs because they are taxable in the district court rather than our court; our clerk's office has a uniform policy of declining to tax transcription costs. *See* Fed. R. App. P. 39(e)(2). Judge Hartz agrees with the clerk's policy but intimates that this approach treats a represented party more favorably than the pro se litigant in *Hill v. Corizon Health, Inc.*, No. 17-3087, 2017 WL 5256213 (10th Cir. Nov. 13, 2017) (unpublished op.). There the majority declined to reverse the district court on a ground that no one had presented on appeal, and Judge Hartz expressed the view that we should have raised that ground sua sponte and reversed. 2017 WL 5256213, at *3-6 (Hartz, J., concurring in part and dissenting in part).

The issue in *Hill* was entirely different. There we recognized that our court generally does not consider reversing on grounds that an appellant fails to raise and, in those few cases where we have done so, we rely on the presence of exceptional circumstances. *See Hill v. Corizon Health, Inc.*, No. 17-3087, 2017 WL 5256213, at *2 (10th Cir. Nov. 13, 2017) (unpublished op.) (Bacharach, J., concurring). A majority in *Hill* did not regard the circumstances as exceptional and confined our consideration to the grounds raised by the appellant. Judge Hartz felt differently and expressed his view in a separate opinion. Now he again raises his concern about the majority's analysis in *Hill*, suggesting that the court's ministerial decision to follow its standard practice on taxation of transcription costs reflects an inconsistency with the majority's approach in *Hill*. But the majority's approach in *Hill* has nothing to do with what the court has done here.

As Judge Hartz acknowledges, the court's action here was correct. The court simply applied the same principles that are uniformly applied in our court on taxation of costs.[1] This is as it should be, for Congress has made a concerted effort to standardize the taxation of costs. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761 (1980) ("Above all, Congress sought to standardize the treatment of costs in federal courts, to 'make them uniform—make the law explicit and definite.'" (quoting H.R. Rep. No. 32-50, at 6 (1852))); *Alyeska Pipeline Serv. v. Wilderness Soc'y*, 421 U.S. 240, 251 (1975) ("In 1853, Congress

1. Even when a bill of costs is unopposed, our clerk's policy is to deny transcription costs because of their availability in district court.

undertook to standardize the costs allowable in federal litigation.").

In this case, the court is simply applying the standardized policy regarding treatment of requests for taxation of transcription costs. This practice does not treat the pro se litigant in *Hill* any differently. Like every other litigant, he is subject to our uniformly applicable rules on

- the need for exceptional circumstances for our court to reverse on a ground raised sua sponte and
- the need to seek transcription costs in district court rather than in our court.

\* \* \*

Like Judge Hartz, I believe the court acted properly in declining to tax transcription costs. The court's decision here on taxation of costs is unrelated to the majority's approach to sua sponte reversal in *Hill v. Corizon.*